IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| JOHN C. KING, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | Civil Action No.: 4:15-cv-00830-KPJ |
| SELECT PORTFOLIO SERVICING, INC., and U.S. BANK, N.A., SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR TRUSTEE TO LASALLE BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-FF18, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank, National Association, Successor Trustee to Bank of America, N.A., as Successor Trustee to LaSalle Bank, N.A., as Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF18's ("Trustee Bank") (collectively, "Defendants") Motion for Summary Judgment (the "Motion") (Dkt. 62). After review of the Motion and associated briefing (*see* Dkts. 75, 79, 80, 81, 82), the Court finds the Motion (Dkt. 62) is **GRANTED** and Plaintiff John C. King's ("Plaintiff") claim is **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Plaintiff John C. King is the current owner of real property located at 11898 Eastpark Lane, Frisco, Texas 75033 (the "Property"). *See* Dkts. 60 at ¶ 6; 62 at 6. According to Plaintiff's Fourth

1

Amended Complaint, Defendants or their predecessors filed a valid Deed of Trust ("Deed of Trust") encumbering the Property on October 31, 2006, in Denton County, Texas. *See* Dkt. 60 at ¶ 8. Identical copies of the Deed of Trust, dated October 18, 2006, were submitted to the Court by Plaintiff and Defendants. *See* Dkts. 75-2; 34-1 at 13-33; and 62-2.[1] The Deed of Trust served as security for a Promissory Note (the "Promissory Note"), which was also dated October 18, 2006, and executed by Plaintiff's then-wife, Genevieve King ("Ms. King"), for the original principal amount of $192,700.00 (the Deed of Trust and Promissory Note are collectively referred to as the "Loan"). *See* Dkt. 34-1 at 6-11. Plaintiff admits in his Fourth Amended Complaint that he has not made any payments towards the balance due on the Promissory Note since April 1, 2008. *See* Dkt. 60 at ¶ 16; *see also* Dkt. 62 at 7. Regardless of this fact, Plaintiff seeks a declaratory judgment granting him quiet title to the Property. *See* Dkt. 60 at ¶ 15. Plaintiff alleges that any lien Defendants had on the Property is now void due to inaction past the statute of limitations period after a notice of acceleration and foreclosure. *Id.* at ¶ 16.

Plaintiff's claim centers on the timeline of several notices sent to him and/or Ms. King by Defendants and/or their predecessors. First, Plaintiff alleges (and Defendant accepts (*see* Dkt. 62 at 11)) that on November 10, 2008 (subsequent to Plaintiff's default on the Loan in April 2008), Balcom Law Firm, P.C., which had been retained by Defendants' predecessor mortgage servicer, sent a Notice of Acceleration and Notice of Foreclosure (the "November 2008 Acceleration Notice"), accelerating the debt owed under the Promissory Note, and notifying Plaintiff that

---

[1] The Court notes there are several exhibits (the "Exhibits") attached to Defendants' Motion which contain imaging issues. *See* Dkt. 62-2; 62-3; 62-4; 62-5; 62-6; and 62-8. Plaintiff objects to the Exhibits on the grounds that, *inter alia*, the imaging issues constitute "alterations," and therefore, the Exhibits are not true and correct copies of the original documents. *See* Dkt. 75 at 6-9. The Court has reviewed the entire record and notes that Defendants submitted identical exhibits *without* imaging issues in support of their previous Motion for Summary Judgment (the "Initial Motion") (Dkt. 34), which was denied without prejudice. *See* Dkt. 51. The Court finds the imaging issues with the Exhibits to the Motion are harmless given Defendants' previously filed identical exhibits without those issues. Accordingly, Plaintiff's objections regarding "alterations" to the Exhibits are overruled. The Court will, therefore, refer to Exhibits from the Motion (Dkt. 62) and/or the Initial Motion (Dkt. 34) as necessary.

foreclosure sale of the Property would occur if the debt owed was not paid in full. *See* Dkt. 75-6. The November 2008 Acceleration Notice informed Plaintiff that the debt owed was $191,284.92, plus interest accruing from the date of default, late charges, expenses of collection, and Balcom Law Firm, P.C.'s attorneys' fees. *See id*. at 2-3. Next, Plaintiff stipulates that Ms. King received a letter late in December 2010 (the "December 2010 Notice"), which stated that if the Loan's default was "not cured on or before January 5, 2011, the mortgage payments [would] be accelerated." *See* Dkts. 62-5 at 4; 75 at 11.[2] Lastly, the most recent undisputed notice came on October 8, 2014, when Barrett Daffin Frappier Turner & Engel, LLP, on behalf of Defendant SPS, sent a "Rescission of Acceleration of Loan Maturity" (the "October 2014 Notice") to Plaintiff. *See* Dkts. 62 at 12; 62-13; 62-14; and 75 at 13.

After this series of notices, and after filing the present lawsuit (the "Lawsuit"), on November 3, 2015, Plaintiff filed for bankruptcy in the Eastern District of Texas. *See* Dkt. 62-15. Although Plaintiff filed the Lawsuit on October 26, 2015, he did not include his claim against Defendants in the bankruptcy schedules, wherein Plaintiff was asked to list his assets, including potential "[c]laims against third parties, whether or not [Plaintiff had] filed a lawsuit or made a demand for payment." Dkt. 62-16 at10. Accordingly, the Lawsuit (and resulting potential quiet title to the Property) was not included in Plaintiff's Bankruptcy Estate (the "Bankruptcy Estate"). Instead, Plaintiff included the Lawsuit in his Statement of Financial Affairs. *See* Dkt. 62-18 at 40. The Bankruptcy Court ultimately issued an Order of Discharge on February 10, 2016. *See* Dkt. 62-17.

---

[2] Additional notices were allegedly sent in 2012; however, Plaintiff objects to their validity. Those notices are addressed below.

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there be no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. *See id.* at 248. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

### B. STANDING TO PURSUE CLAIM CONNECTED TO BANKRUPTCY PETITION

Under Section 541 of the Bankruptcy Code, a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (stating that "all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a

bankruptcy petition."). "Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." *Kane*, 535 F.3d at 385 (citing 11 U.S.C. §§ 323, 541(a)(1); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001). However, after notice and hearing, a trustee may abandon any property of the estate if it is "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

### C. JUDICIAL ESTOPPEL CONNECTED TO BANKRUPTCY PETITION

Judicial estoppel is a common law doctrine preventing parties from assuming advantageous, inconsistent positions in litigation. *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004). "Generally, judicial estoppel is invoked where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 334–35 (quoting *Scarano v. Cent. R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). The Fifth Circuit has recognized three factors when deciding whether to invoke judicial estoppel: whether (1) a party's position is clearly inconsistent with its previous one; (2) a court accepted the previous position; and (3) inconsistency was "inadvertent." *Id.* at 335. In the bankruptcy context, "inadvertence" requires that a debtor "lack[] knowledge of [an] undisclosed claim[] *or* ha[ve] no motive for [its] concealment." *Id.* (emphasis in original).

### III. ANALYSIS

Defendants contend Plaintiff's claim should be dismissed for the following reasons: (1) Plaintiff lacks standing because any claim related to the Property belongs to the Bankruptcy Estate; (2) Plaintiff's failure to disclose the Lawsuit in the Bankruptcy Estate judicially estops him from asserting a claim; and (3) any prior acceleration of the Loan by Defendants was abandoned prior to any four-year statute of limitations period. *See* Dkt. 62 at 14-27.

5

Plaintiff responds that he did not include the lawsuit in the Bankruptcy Estate due to an email exchange with the Bankruptcy Estate trustee, wherein the trustee stated that the Bankruptcy Estate would have "no rights or interest in the suit" since it involved Plaintiff's homestead and since it sought "only declaratory relief as it pertains to the mortgage." *See* Dkt. 75-5 at 2. Based on this information, Plaintiff argues that the lawsuit does not belong to the Bankruptcy Estate; and further, any failure to disclose the lawsuit was inadvertent, and hence, judicial estoppel is not proper. *See* Dkt. 75 at 15. Plaintiff also argues that Defendants' four-year period to finalize foreclosure on the Property after notice of acceleration of the Loan expired, and thus, Defendants' power of sale is void. *See id.* at 23.

### A. BANKRUPTCY PROCEEDINGS: STANDING AND JUDICIAL ESTOPPEL

Defendants argue for summary judgment on two preliminary grounds: Plaintiff (1) lacks standing because any claim to the Property belongs to the Bankruptcy Estate; and (2) should be judicially estopped because he purposefully failed to disclose the existence of the Lawsuit in his bankruptcy filings as an asset. *See* Dkt. 62 at 14, 17-18.

When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets vest in the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) ("{A]ll of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition."). With regards to standing, Plaintiff argues that his "claim" did not seek monetary relief and was related to his homestead; therefore, it was not an asset belonging to the Bankruptcy Estate. *See* Dkt. 75 at 14-15. Plaintiff has provided emails between himself and the Bankruptcy Estate trustee, wherein the trustee seemingly waives the rights

6

of the Bankruptcy Estate to the Lawsuit. *See* Dkt. 75-5. The Court finds that, although Plaintiff's Lawsuit is potentially a "claim," which should have been included in Plaintiff's bankruptcy filings as an asset, there is insufficient evidence in the record to conclude that the Lawsuit belonged to the Bankruptcy Estate and not to Plaintiff. Thus, the Court cannot find as a matter of law that Plaintiff lacks standing.

Regarding judicial estoppel, Plaintiff responds that his email exchange with the Bankruptcy Estate trustee (*see* Dkt. 75-5) supports his decision to not disclose the Lawsuit in his bankruptcy filings as an asset. *See* Dkt. 75 at 23. As previously explained, judicial estoppel is invoked when three requirements are met: (1) a party offers inconsistent positions; (2) a court accepted the previous position; and (3) inconsistency was not "inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d at 335. Based on the email exchange with the Bankruptcy Estate trustee, it is not clear as a matter of law that Plaintiff purposefully failed to disclose the Lawsuit as an asset in his bankruptcy filings. Hence, Defendants are not entitled to summary judgment as a matter of law on these grounds.

### B. STATUTE OF LIMITATIONS TO FORECLOSE, NOTICES OF ACCELERATION, AND CORRESPONDING ABANDONMENT NOTICES

Defendants argue that Plaintiff's claim should be dismissed because the four-year statute of limitations to foreclose never lapsed. *See* Dkt. 62. Texas law requires that "[w]hen a mortgage or deed of trust containing a power of sale creates a lien on real property . . . the lender [must] foreclose no later than four years after the day the cause of action accrues." *Wheeler v. U.S. Bank Nat'l Ass'n*, No. H-14-0874, 2016 WL 554846, at *4 (S.D. Tex. Feb. 10, 2016) (citing Tex. Civ. Prac. & Rem. Code § 16.035; *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001)). "The foreclosure cause of action accrues only when the holder actually exercises its

acceleration option." *Id.*; *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("If a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated."). After acceleration is actually exercised, and "the four-year limitations period expires, the real-property lien and the power of sale to enforce the lien become void." *Wheeler*, 2016 WL 554846, at *4 (citing *Holy Cross Church of God in Christ*, 44 S.W.3d at 567 (citing Tex. Civ. Prac. & Rem. Code § 16.035(d))).

Under Texas law, however, a lender may unilaterally abandon any acceleration option it exercises and restart its four-year limitations period. *See Wheeler*, 2016 WL 554846, at *5; *see also Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 680 (5th Cir. 2015) ("[A] lender can unilaterally abandon an acceleration. . . ."); *Murphy v. HSBC Bank USA*, 95 F. Supp.3d 1025, 1039 (S.D. Tex. 2015) ("There is authority clearly establishing that the lender's or loan servicer's action constituting abandonment of acceleration can be unilateral.").

Moreover, courts have held that an acceleration may be unilaterally "abandoned" by a lender when it provides notice seeking less than the full amount due on a loan. *See Martin v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016) ("As relevant here, the request for payment of less than the full obligation—after initially accelerating the entire obligation—was an unequivocal expression of the bank's intent to abandon or waive its initial acceleration."); *Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015) ("A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'") (citing *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. Appx. 677, 680 (5th Cir. 2015)); *Benamou v. Wells Fargo Bank National Association, et al.*, No. 3:16-cv-401-L-BK, 2017 WL 1394949, at *4 (N.D. Tex. Feb. 5, 2017) ("By sending acceleration warnings

8

requesting payment on less than the full amount of the Loan, Defendant gave Plaintiffs notice that any prior acceleration attempts were abandoned."); *Murphy v. HSBC Bank USA, et al.*, No. CV 12-3278, 2016 WL 6885323, at *2 (S.D. Tex. Sep. 26, 2016), *report and recommendation adopted Murphy v. HSBC Bank, USA*, 2017 WL 393595 (S.D. Tex. Jan. 30, 2017) (holding that a subsequent notice of default sent prior to the expiration of the four-year limitations period constituted abandonment of acceleration because the notice terms were inconsistent with the prior acceleration and allowed the plaintiff to bring the loan current by paying an amount less than the full balance of the loan).

Plaintiff has admitted that Defendants' predecessor sent the November 2008 Acceleration Notice requesting Plaintiff to pay "$191,284.92, plus interest accruing from the date of [Plaintiff's] default, late charges, expenses of collection and [the law] firm's attorney fees" by December 2, 2008, or face foreclosure. *See* Dkt. 60; *see also* Dkt. 75-6. The November 2008 Acceleration Notice provides clear evidence that the Loan was accelerated by including the full Loan amount and also by stating: "the maturity of the Note has been accelerated and demand is hereby made for payment of the balance of all sums dues and owing. . . ." Dkt. 75-6 at 2. Therefore, for purposes of determining whether the four-year statute of limitations expired, the Court finds that November 8, 2008, was the original date Defendants' foreclosure cause of action accrued.

Plaintiff has stipulated that in late December 2010, Ms. King received the December 2010 Notice, which requested payment of $55,843.54 to "cure the default." *See* Dkt. 62-5 at 4. The December 2010 Notice further stated: "If the default is not cured on or before January 5, 2011, the mortgage payments *will be accelerated* with the full amount remaining accelerated and becoming due and payable in full. . . ." *Id.* (emphasis added). Defendants argue that, because the December 2010 Notice seeks an amount less than the full balance owed on the Loan, it "unequivocally

9

manifested an intent to abandon the previous acceleration and provided [the Borrowers] with an opportunity to avoid foreclosure if they cured their arrearage." *Boren*, 807 F.3d at 106. Therefore, Defendants claim the December 2010 Notice proves the November 2008 Acceleration Notice was abandoned within the corresponding four-year limitations period. The Court agrees with Defendants: the December 2010 Notice demonstrated abandonment of the November 2008 Acceleration Notice, and thus, the limitations period was void as of the December 2010 Notice's receipt.

Defendants contend their predecessors sent additional notices to Plaintiff in March and July 2012. *See* Dkt. 62 at 11-12. Accordingly, Defendants submit to the Court two sets of notices: (1) a notice of default and intent to accelerate sent to Plaintiff via certified mail and dated March 2, 2012 (the "March 2012 Notice") (Dkt. 62-9); and (2) a notice of default and intent to accelerate sent to Plaintiff via certified mail and dated July 11, 2012 (the "July 2012 Notice") (collectively, the "2012 Notices") (Dkt. 62-11). To substantiate the validity of these notices, Defendants offer a Declaration of Barrett Daffin Frappier Turner & Engel, LLP in Support of Defendants' Motion for Summary Judgment (the "Barrett Declaration"). *See* Dkt. 62-8. Defendants argue that, substantively, these notices "independently demonstrate that the alleged November 8, 2008 acceleration was timely abandoned. . . ." Dkt. 62 at 25.

Plaintiff's object to the admissibility of the 2012 Notices on several underlying bases: (1) the affiant of the Barrett Declaration, which supports the 2012 Notices, did not exhibit personal knowledge of the mailing of any document; (2) the Barrett Declaration did not adequately authenticate the 2012 Notices; and (3) the Barrett Declaration was not made under penalty of perjury. *See* Dkt. 75 at 8-9. Substantively, Plaintiff objects to the 2012 Notices as evidence of

abandonment of acceleration because they do not include what amount of payment would be needed to cure the noticed default. *See id.*

In response to Plaintiff's objections, Defendants submitted a Motion for Leave to Supplement Summary Judgment Record (the "Motion to Supplement"). *See* Dkt. 80. With the Motion to Supplement, Defendants attached an Amended Declaration of Barrett Daffin Frappier Turner & Engel, LLP in Support of Defendants' Motion for Summary Judgment (the "Amended Barrett Declaration"), which remained the same as the Barrett Declaration, except that the Amended Barrett Declaration included a declaration that it was made under penalty of perjury. *See* Dkt. 80-1. Defendants argued the omission of a penalty of perjury notation was a "ministerial error," and therefore, granting leave to admit the Amended Barrett Declaration would not prejudice Plaintiff. The Court agrees, and therefore, **GRANTS** Defendants' Motion to Supplement (Dkt. 80). The Court hereby admits the Amended Barrett Declaration (Dkt. 80-1) to the record for purposes of the Motion (Dkt. 62).

Given that the Amended Barrett Declaration is admitted, the Court finds that Plaintiff's foundation objections are overruled and Defendants have properly substantiated the validity of the 2012 Notices because the Amended Barrett Declaration provides sworn testimony that the 2012 Notices were records kept in the ordinary course of business. Substantively, the Court agrees with Defendants and finds that the 2012 Notices independently demonstrate that the November 2008 Acceleration Notice was timely abandoned because the 2012 Notices state: "[i]n the event the default has not been cured within thirty (30) days of notice, the Mortgage Servicer *will accelerate* the maturity date of the Note evidencing the loan and declare all sums due thereunder immediately due and payble." Dkt. 62-9; 62-11 (emphasis added). Like the December 2010 Notice, the 2012

Notices abandoned any prior notice of acceleration, leaving Defendants without a foreclosure cause of action (and corresponding four-year statute of limitations to pursue an action).

Defendants lastly submit to the Court the October 2014 Notice, which states, "Mortgagee under the Deed of Trust referenced below hereby rescinds the notice of acceleration dated 07/26/13 and all prior notices of acceleration." *See* Dkts. 62-13; 62-14. Plaintiff stipulates that he and Ms. King received the October 2014 Notice. *See* Dkt. 75 at 9; *see also* 62-13; 62-14. Plaintiff argues that, because there was no prior abandonment of the November 2008 Acceleration Notice, the October 2014 Notice was untimely and it was, therefore, ineffective. *See* Dkt. 75. The Court notes, however, that Plaintiff's argument relies upon a finding that the December 2010 Notice and 2012 Notices did not abandon the November 2008 Acceleration Notice. Since the Court has found that the December 2010 Notice and 2012 Notices abandoned the prior notice of acceleration, Plaintiff's arguments are meritless.

Separately, although Plaintiff argues the "notice of acceleration dated 07/26/13" is "not established as an uncontroverted fact," Plaintiff's stipulation that the October 2014 Notice was received provides independent evidence that any such notice of acceleration from 2013 was timely abandoned by the October 2014 Notice. Therefore, the Court finds that Defendants' four-year statute of limitations to pursue a foreclosure action never lapsed, and the Motion for Summary Judgment is, accordingly, granted on these grounds.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that Defendants' Motion to Supplement (Dkt. 80) is **GRANTED**, and Defendants' Motion for Summary Judgment (Dkt. 62) is **GRANTED.** All claims Plaintiff asserted, or could have asserted, against Defendants in this Lawsuit are hereby

**DISMISSED WITH PREJUDICE**. All relief not previously granted is hereby **DENIED**, and the Clerk is directed to **CLOSE** this civil action.

    **IT IS SO ORDERED**.

    **SIGNED this 4th day of December, 2017.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE